**SIGNED this 20 day of February, 2026.**



**Robert M. Matson**
**United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| In re:<br><br>Andrew L. Johnson<br><br>Debtor | Case No. 25-10103-RMM<br><br>Chapter 12 |

### MEMORANDUM OPINION ON TRUSTEE'S APPLICATION FOR COMPENSATION

Before the Court is the Application for Compensation [Doc. 123] ("Application") filed by Chapter 12 trustee Walter Kelley ("Trustee"), Debtor's Objection to Trustee's Application for Compensation [Doc. 127] ("Objection"), and the Brief in Support of Trustee's Compensation [Doc. 129] ("Trustee's Brief"). This dispute pertains to the Trustee's request for statutory fees on payments the Debtor made to secured creditors at a pre-confirmation sale closing. At issue is whether the statutory fee of 28 U.S.C. § 586(e) applies to these payments.

1

The Court held a hearing on the Application on December 3, 2025, at 2:00 PM. The Trustee and the Debtor each appeared through counsel. Also present was the Trustee, who provided testimony. At the close of evidence and arguments, the Court took the matter under advisement.

As explained below, the Court concludes that the statutory fee does not apply to the payments at issue.

## I.    Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the U.S. District Court for the Middle District of Georgia's Amended Standing Order of Reference, General Order 2012-1 (Feb. 21, 2012). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O).

## II.    Facts

The Debtor filed this Chapter 12 case on February 3, 2025. At the time of filing, the Debtor owned and operated a cattle farming operation in Pelham, Georgia, specializing in raising high quality angus beef cattle. As described in the Debtor's filings, the Debtor filed this case to prevent a foreclosure by the Debtor's primary secured lender (Synovus Bank), which helped the Debtor preserve equity in his farm.[1]

### A.    Sale Motion & Sale Order

On February 19, 2025, the Debtor filed a motion seeking authority to sell his farmland, associated fixtures, and farm equipment by public auction. *See* Doc. 27 ("Sale Motion"). The Debtor also requested authority to disburse the sale proceeds. The

---

[1] *See* Chapter 12 Plan of Liquidation at 2 [Doc. 75].

2

Debtor proposed disbursing the proceeds, at closing, to pay creditors with claims secured by liens against the property, including Synovus Bank ("Synovus"), the United States Department of Agriculture ("USDA"), Diversified Financial Services, LLC ("DFS"), and the Mitchell County Tax Commissioner ("Mitchell County").

The Debtor also proposed the following disbursement: "pay to Debtor, care of Debtor's undersigned counsel at closing, an amount sufficient to pay any anticipated fee owed to the Chapter 12 Trustee that is generated from the sale of the Property and disbursal of the proceeds, with such proceeds to be held in the trust account of Debtor's undersigned counsel and applied toward such Trustee fees." Sale Motion at 6.

Objections to the Sale Motion were filed by the USDA [Doc. 41], Synovus [Doc. 43], and DFS [Doc. 44]. These objections were eventually resolved without Court involvement. The Court granted the Sale Motion on April 24, 2025, in an order and on terms consented to by the objecting creditors and the Trustee. *See* Doc. 57 ("Sale Order"). The Sale Order provided for the auction to occur before May 31, 2025, followed by three days for the Debtor to execute a purchase and sale agreement, followed by a 45-day closing period.

Relevant here, under the Sale Order, the closing attorney and the Debtor were authorized and required to distribute the sale proceeds within three days of closing as follows:

- to pay the buyer's premium owed to the auctioneer (Sale Order ¶ 12(f)a);
- to pay any ad valorem taxes owing to Mitchell County (Sale Order ¶ 12(f)b);
- to pay ordinary sale costs (Sale Order ¶ 12(f)c);

3

- to pay up to $15,000 in attorney fees incurred in connection with the sale (Sale Order ¶ 12(f)d);

- to pay $75,000 to DFS, the amount deemed to represent the value of irrigation equipment serving as DFS's collateral (Sale Order ¶ 12(f)e);

- to "pay to Debtor, care of Debtor's counsel, at closing, funds sufficient to pay any fees due to the Chapter 12 Trustee, as a result of the above-described distributions" (Sale Order ¶ 12(f)f);

- to pay Synovus the amount necessary to satisfy its claim (Sale Order ¶ 12(f)g); and

- to pay the USDA the amount necessary to satisfy its claim (Sale Order ¶ 12(f)h).

The auction was timely completed by the end of May. The highest bid price was $4,976,050.

### B.  Chapter 12 Plan, Sale Closing, and Confirmation Order

The Debtor filed his Chapter 12 plan on June 4, 2025 [Doc. 75] ("Plan"). The Plan was designated as a plan of liquidation. Consistent with the Sale Order, the Plan stated the secured claims of Synovus and the USDA would be paid at closing, as would the $75,000 allowed secured claim of DFS. The Plan also provided for the following: surrender or sale of certain collateral securing a separate DFS claim; payment of a secured claim of held by Capital City Bank for a modified vehicle note; payment over 10 years to the USDA for any portion of its claim that is unsecured and determined to be non-dischargeable; and an annual pro-rata distribution to allowed general unsecured claimants after liquidation of the Debtor's remaining assets.

Objections to the Plan were filed by DFS [Doc. 88] and the USDA [Doc. 96]. At the July 16, 2025, confirmation hearing, the Debtor's counsel announced these objections had been resolved. Counsel also announced the farm and equipment sale

4

had timely closed two days before, on July 14, generating net proceeds sufficient to satisfy the claims secured by the property, with substantial excess proceeds available for distribution to unsecured creditors. As more particularly set forth in the Debtor's Report of Sale Closing [Doc. 106], the sale generated net proceeds of $4,971,384.67, from which the following creditor distributions were made at the sale closing: $4,354,493.13 over four distributions to Synovus (paying off three different loans and a claim for legal fees and costs); $235,977.35 to the USDA; $75,000 to DFS; and $20,917.69 to Mitchell County.[2] Excess proceeds of $269,846.50 were paid to the Trustee for distribution under the Plan.[3]

At the confirmation hearing, the Debtor's counsel and the Trustee alerted the Court to a dispute that arose in connection with the sale closing: whether the Trustee is entitled to the statutory fee of 28 U.S.C. § 586(e) as to the distributions made at closing from the sale proceeds. Counsel and the Trustee, however, announced the issue would be reserved for later resolution, with the reservation to be memorialized in the plan confirmation order. The Court orally confirmed the Plan at the hearing, and the confirmation order [Doc. 113] was entered August 25, 2025. The confirmation order was consented to by the objecting parties and the Trustee. In relevant part, the confirmation order provides as follows:

> The rights and claims of Walter W. Kelley, Trustee ("Trustee") to receive a commission on payments of the claims listed below which were paid at closing from proceeds of real estate sold during this case - shall be

---

[2] The distributions to Synovus Bank, the USDA, and Mitchell County paid the claims of these creditors in full. The distribution to DFS satisfied the $75,000 secured portion of a $119,186.06 claim.

[3] During the pendency of this case, the Debtor has separately generated income from the sale of cattle. These sales generated net proceeds of $189,000, which have also been paid to the Trustee for distribution under the Plan.

5

reserved and decided by the Court based on the Trustee's application(s) for compensation and any objection thereto filed by the Debtor or other party in interest. The Trustee shall file his application for compensation relating to such payment within 60 days from the date of this Order.

> a. Mitchell County Tax Commissioner - $20,917.69
> b. Synovus Bank - $3,415,843.24
> c. Synovus Bank - $593,827.63
> d. Synovus Bank - $247,903.31
> e. Synovus Bank - $96,918.95
> f. USDA – Farm Service Agency - $235,977.35
> g. Diversified Financial Services, LLC - $75,000.00

Doc. 113 at 2–3.

### C. The Application

The Trustee timely filed his Application on October 17, 2025. The Trustee requests approval of $191,367,74 in statutory fees under 28 U.S.C. § 586(e), calculated as follows:

| Payments | Amount Paid | Requested Fee |
|---|---|---|
| Payment to Synovus Loan 1 at closing | $3,415,843.24 | $119,827.34 |
| Payment to Synovus Loan 2 at closing | $593,827.63 | $18,365.80 |
| Payment to Synovus Loan 3 at closing | $247,903.31 | $7,667.11 |
| Payment to Synovus legal fees at closing | $96,918.95 | $2,997.49 |
| Payment to USDA at closing | $235,977.35 | $7,298.27 |
| Payment to DFS at closing | $75,000.00 | $2,319.59 |
| Proceeds received from auction sale | $271,507.50 | $27,150.75 |
| Proceeds received from Sale of Cattle | $186,000.00 | $5,580.00 |
| Payment to Capital City Bank | $838.89 | $83.89 |
| Payment to Capital City Bank | $775.00 | $77.50 |
| **Total** | **$5,124,591.87** | **$191,367.74** |

In the Objection, the Debtor asserts the Trustee is not entitled to a fee on the payments made to Synovus, the USDA, DFS, and Mitchell County at closing.[4] The

---

[4] The Application does not include a fee request as to the payment to Mitchell County. *See* Application at 5–6 (itemizing payments for which a fee is requested). Both parties, however, have proceeded as if

6

Debtor argues these payments were not "under the plan" (as that term is used in 28 U.S.C. § 586(e)) and the claims of these creditors were unimpaired. In the Trustee's Brief, the Trustee disagrees with the Debtor's contentions, arguing the claims of the creditors paid at closing were impaired and constitute payments "under the plan." The Trustee also argues the Objection is barred by judicial estoppel.

Per the Objection, the Trustee has received approximately $458,846.50 in unencumbered proceeds to be distributed under the Plan, comprising the $269,846.50 in net proceeds remaining from the sale of the farm and equipment and the $189,000 generated from the sale of cattle. Per the Application and Trustee's Brief, the Trustee received $271,507.50 (not $269,846.50) from the sale of the farm and equipment. While an explanation for the discrepancy in net sale proceeds is unclear, the parties appear to agree that the Trustee currently holds $408,128.14 in funds on deposit.[5] This figure accounts for $27,312.14 in fees the Trustee has already collected[6] and which are not in dispute.

If the Trustee is entitled to all of the requested fees, the remaining funds on deposit would be disbursed as follows: $44,098.16 to the Debtor's bankruptcy attorneys; $199,974.37 to allowed unsecured claimants, who would receive approximately 71% of their claims; and $164,055.61 to the Trustee to satisfy the remainder of the requested

---

the Trustee seeks a fee for that payment. *See* Objection at 2, 5, 6, 8, 11–12 (arguing against statutory fee on payments to the "Closing Creditors," including Mitchell County); Trustee's Brief at 3, 6, 7, 14–15, 17 (arguing for statutory fee on payments at closing to Synovus, USDA, DFS, and Mitchell County). The Court considers this discrepancy moot because the Court's conclusions regarding 28 U.S.C. § 586(e) would apply to the Mitchell County payment either way.

[5] *See* Trustee's Brief at 2 ("The Trustee has $408,128.14 on deposit."); Debtor's Exhibit D1 from Application hearing (demonstrative exhibit identifying the funds on deposit as $408,128.14).

[6] *See* Trustee's Brief at 3 n.5.

7

statutory fee. Trustee's Brief at 3. If the Trustee is not entitled to fees on payments made at the sale closing, the funds would be disbursed as follows: $44,098.16 to the Debtor's bankruptcy attorneys; $281,622.83 to allowed unsecured claimants, who would receive 100% of their claims; $9,771.62 to the Trustee to pay the remainder of the statutory fee; and the remaining $72,635.53 would go to the Debtor as surplus proceeds. Trustee's Brief at 3–4. The difference in fees to the Trustee is $154,283.98.

### III. Analysis

#### A. Judicial Estoppel

The Trustee first argues the Debtor is judicially estopped from objecting to the fee for the payments made at the sale closing "Two different tests govern judicial estoppel's application, depending on whether the party seeking to apply it was a party to the prior proceeding in which the other party took an inconsistent position." *United States v. Munoz*, 112 F.4th 923, 934 (11th Cir. 2024). When, as here, the party invoking judicial estoppel was a party to the prior proceeding in which the other party took the inconsistent position, the Supreme Court's test set forth in *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001), applies. *Munoz*, 112 F.4th at 934.[7] Under this test, three factors "'typically inform the decision whether to apply' judicial estoppel": "First, the party's two positions must be clearly inconsistent. Second, the party must have succeeded in persuading a court to accept its earlier position. And third, the party must 'derive an unfair advantage or impose an unfair detriment on the opposing party if not

---

[7] When the party invoking judicial estoppel was not a party to the prior proceeding, the test set forth in *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017), applies. *Munoz*, 112 F.4th at 935.

8

estopped.'" *Id.* at 934–35 (citations omitted) (quoting *New Hampshire*, 532 U.S. at 750, 751)).

The Trustee argues judicial estoppel applies here as follows:

> In the instant case, each element of judicial estoppel is met: (1) The Debtor's present objection to the Trustee's commission is inconsistent with the Debtor's earlier motion to sell which provided that a commission would be paid when property was sold and the proceeds disbursed; (2) the Debtor's motion to sell stating Trustee would receive a commission "*generated from the sale of the Property and disbursal of the proceeds …*" [docket 21, page 6] was approved by this Court; and (3) the Debtor would derive an unfair advantage by disallowing the commission because, if the commission was disallowed, the Debtor would receive a $72,635 surplus[.]

Trustee's Brief at 3. The Court disagrees that any factors are present here.

First, the Sale Motion did not provide that a commission would be paid on disbursements made directly to creditors at closing. The Sale Motion asserted no position regarding whether 28 U.S.C. § 586(e) applies to those payments. In the Sale Motion, the Debtor requested authority to sell property, taking the position that the contemplated sale satisfied 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 6004. In connection with that request, the Debtor also sought authority to disburse the sale proceeds. The Debtor contemplated disbursing to the various secured creditors noted above, as well as "an amount sufficient to pay any anticipated fee owed to the Chapter 12 Trustee that is generated from the sale of the Property and disbursal of the proceeds." Sale Motion at 6. A request for authority to disburse "an amount sufficient to pay any anticipated fee" generated from the sale cannot be described as the Debtor taking the position that the Trustee is entitled to a fee on the proceeds disbursed

9

directly to creditors at closing. As such, the Debtor's positions in the Objection are not clearly inconsistent with those in the Sale Motion.

Second, in granting the Sale Motion, the Court did not accept any position regarding statutory fees generated from the sale or whether the fee would apply to the payments at issue. Rather, and consistent with the indefinite language used in the Sale Motion, the Sale Order authorized a distribution "to Debtor, care of Debtor's counsel, at closing, funds sufficient to pay any fees due to the Chapter 12 Trustee, as a result of the above-described distributions." Sale Order ¶ 12(f)f. Authorizing a distribution of "funds sufficient to pay any fees due to the Chapter 12 Trustee" is not accepting any position relevant to this dispute.[8]

Finally, the Debtor would not derive an unfair advantage by receiving a surplus. The sale proceeds at issue were generated by the sale of property of the estate. Bankruptcy debtors are generally entitled to receive surplus proceeds after all creditors have been paid. The Debtor receiving funds to which he is legally entitled after all creditors are paid cannot be described as receiving an unfair advantage.

For all the foregoing reasons, the Court finds that judicial estoppel does not apply to the Objection.

### B.   Statutory Fees Under 28 U.S.C. § 586(e)

The compensation framework for standing trustees is set forth in 28 U.S.C. § 586(e). The Attorney General (after consulting with the United States trustee) "fixes"

---

[8] The court-acceptance issue is unhelpful to the Trustee for another reason. Paragraph 12(f)f of the Sale Order pertains to fees due "as a result of the above-described distributions." The distributions to Synovus and the USDA—representing the vast majority of funds at issue—are not included in the "above-described distributions." Those distributions are described below ¶ 12(f)f.

10

a maximum annual compensation pursuant to 28 U.S.C. § 586(e)(1)(A). The Attorney General also "fixes" a percentage fee tied to plan payments and which is "based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee." 28 U.S.C. § 586(e)(1)(B). As to standing Chapter 12 trustees, the percentage fee cannot exceed "ten percent of the payments made under the plan" as to the first $450,000 in aggregate plan payments and "three percent of payments made under the plan" as to payments made thereafter. 28 U.S.C. § 586(e)(1)(B)(ii).[9] The percentage fee is intended to pay both the compensation and expenses of the trustee, with the compensation capped at 5% of all payments the trustee receives under plans. *See* 28 U.S.C. § 586(e)(2)(A)–(B); 8 COLLIER ON BANKRUPTCY ¶ 6.15[1] (16th 2026) ("The percentage fee is intended to cover the maximum salary plus the actual necessary expenses of the standing trustee. … Although the overall fee can be as high as 10 percent, 28 U.S.C. § 586(e)(2) limits a standing trustee's compensation (as opposed to compensation plus expenses) to 5 percent of all payments received under plans.").

Relevant to the dispute before the Court, standing trustees collect the fees as follows: "Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under subchapter V of chapter 11 or chapter 12 or 13 of title 11 for which such individual serves as standing trustee." 28 U.S.C. § 586(e)(2).

---

[9] At Application hearing, the Trustee testified the current fixed percentage fee is 10% as to the first $450,000 and 3% thereafter. He also testified his current maximum annual compensation is $274,284.

11

The Court has reviewed the caselaw construing 28 U.S.C. § 586(e) in disputes over direct payments and whether a standing trustee is entitled to the statutory fee for direct payments. These disputes typically arise in the context of plan confirmation and involve the issues of whether the debtor may directly pay certain secured claimants and, if so, whether the trustee is entitled to the statutory fee on those payments.[10]

Here, the issue is not whether the Debtor is or was authorized to directly pay secured creditors. No party ever raised the issue before the relevant payments, and given the context of this dispute—consented-to and Court-authorized direct payments—no party could have raised the issue after the payments.[11] Thus the only

---

[10] *See, e.g.*, *In re Overholt*, 125 B.R. 202, 204 (S.D. Ohio 1990) ("The first issue before the Court is whether the debtors may pay impaired claims directly to their creditors, thus avoiding payment of the statutorily mandated percentage fees otherwise due the trustee. Resolution of this issue will require determination of three questions. First, can a debtor make direct payments to a creditor at all? Second, if direct payments are allowed, may impaired claims also be paid directly? Finally, if an impaired claim can be paid directly, is the trustee entitled to a percentage fee for the amount of the debt which was paid directly to the creditor?"); *In re Pianowski,* 92 B.R. 225, 231 (Bankr. W.D. Mich. 1988) ("It appears that the reported cases discussed above may be roughly divided into one of two categories. The first group of cases either prohibits direct payments, strictly limits a debtor's ability to make direct payments to creditors or, even if direct payments are permitted, mandates that such payments will be subject to the trustee's statutory percentage fee. In most of these cases, the key question is whether the affected creditor's treatment has been modified by the proposed Chapter 12 plan. … The second group of cases permits a debtor to make direct payments to secured creditors, with such payments not subject to the trustee's statutory percentage fee, notwithstanding that such creditors may have their rights modified under the proposed Chapter 12 plan.") (citations omitted); *In re Westpfahl*, 168 B.R. 337, 360 (Bankr. C.D. Ill. 1994) ("What forms the heart of all of these cases is the right of a Chapter 12 debtor to make direct payments to priority and secured creditors without imposition of a Chapter 12 Trustee's fee."); *In re Jennings*, 190 B.R. 863, 863 (Bankr. W.D. Mo. 1995) ("The Chapter 12 Trustee … objects to confirmation of debtor's Chapter 12 plan on the grounds that the plan permits the debtor to make direct payments to impaired secured creditors."); *In re Speir*, No. 16-11947-JDW, 2018 WL 3814276, at *1 (Bankr. N.D. Miss. Aug. 8, 2018) ("This matter is before the Court on the *Objection to Confirmation* … filed by the chapter 12 standing trustee, Harold J. Barkley, Jr. …, in the bankruptcy case of George A. Speir …. The issues raised in the Objection have all been resolved, except for the question of whether the Debtor must make all payments through the Trustee, or may instead pay his secured creditors directly. The Trustee does not receive a commission from direct payments, while he receives a ten percent commission on payments he distributes.") (citations omitted).

[11] The U.S. Court of Appeals for the Ninth Circuit has held that Chapter 12 debtors cannot make direct payments to any "impaired" creditors, or creditors whose claims have been modified in the bankruptcy case. *See In re Fulkrod*, 973 F.2d 801, 802–03 (9th Cir. 1992). The Ninth Circuit appears to be an

12

issue before the Court is whether the Trustee is entitled to the statutory fee for the payments made directly to creditors at the sale closing.

The caselaw discussing statutory fees on direct payments can generally be divided into two groups. In one group are cases holding the statutory fee applies to any direct payments to impaired creditors, but not to creditors deemed unimpaired. "In most of these cases, the key question is whether the affected creditor's treatment has been modified by the proposed Chapter 12 plan." *In re Pianowski*, 92 B.R. 225, 231 (Bankr. W.D. Mich. 1988). These cases reason that payments on impaired or modified claims are to be considered "under the plan" and thus subject to the statutory fee. *See, e.g.*, *In re Logemann*, 88 B.R. 938, 942 (Bankr. S.D. Iowa 1988) ("In the present case, there can be no dispute that the treatment of the Federal Land Bank's claim has been modified from the original loan documents. Accordingly, the claim is impaired. It is under the plan. Plan payments on that claim are subject to the trustee's percentage fee."). This appears to be a minority position.

In the other group are cases holding the statutory fee does not apply to any direct payments because such payments are not "received by" the trustee. These cases generally reason that direct payments are excluded from the statutory fee by the plain meaning of the statute—*i.e.*, that the trustee "shall collect such percentage fee from all payments *received by*" the trustee. 28 U.S.C. § 586(e)(2) (emphasis added). *See, e.g.*, *In*

---

outlier in this regard, and the *Fulkrod* opinion has been criticized as adopting a position at odds with the Bankruptcy Code. *See, e.g.*, *In re McCann*, 202 B.R. 824, 827 (Bankr. N.D.N.Y. 1996) ("To find that *Fulkrod* correctly interpreted these sections as barring all direct payments by the debtor would place this Court in the position of ignoring clear congressional intent."). Regardless, a Chapter 12 debtor's ability to make direct payments is not before this Court.

13

*re Beard*, 45 F.3d 113, 119 (6th Cir. 1995) ("It is both curious and noteworthy that 28 U.S.C. § 586(e)(2) does not state 'payments received or that could have been received,' 'payments made by the trustee or debtor under the plan,' or other similar language which would mandate payment of the percentage fee on a constructive receipt basis. Instead, Congress constructed a scheme that envisioned that debtors would at times be able to pay their debts directly to their creditors, allowing them to bypass the trustee.")(citation modified); *In re Overholt*, 125 B.R. 202, 207 (S.D. Ohio 1990) ("Congress chose language that is instructive in its simplicity and unmistakable in its meaning: only actual receipt of the payments will confer upon the trustee a right to compensation. Therefore, the plain language of the statute directs that the trustee in Chapter 12 reorganizations is entitled to a percentage fee only to the extent he actually receives the monies prior to disbursement. Thus, direct payments by debtors are not subject to the trustee's fee."); *In re Wagner*, 36 F.3d 723, 728 (8th Cir. 1994) ("We conclude that § 586(e)(2) means what it says and requires trustee's fees only on those payments 'received by' the trustee.; *In re Heller*, 105 B.R. 434, 437 (Bankr. N.D. Ill. 1989) ("A plain reading of Section 586 shows that the trustee is entitled to the statutory percentage on only those payments which the trustee receives for distribution. Indeed, there is nothing in the legislative history that would suggest a different interpretation. It follows, therefore, that the debtor may make certain payments directly without incurring the trustee's statutory percentage."); *In re McCann*, 202 B.R. 824, 830 (Bankr. N.D.N.Y. 1996) ("the plain language of section 586(e)(2) clearly requires the

14

trustee to collect the statutory 'percentage fee from all payments *received by such individual*'").

As other courts have recognized, this is the majority position. *See, e.g.*, *In re Speir*, No. 16-11947-JDW, 2018 WL 3814276, at *3, 2018 Bankr. LEXIS 2359, at *8 (Bankr. N.D. Miss. Aug. 8, 2018) ("This is clearly the majority position."); *In re Edge*, 122 B.R. 219, 221 (D. Vt. 1990) ("A majority of the courts confronting the issue have interpreted this amendment to mean that the standing trustee cannot assess his fee against payments made directly by the debtor to a creditor because he does not 'receive' them.").

This Court assesses this position as representing a clear, if not overwhelming, majority. The minority position was prominent in the Sixth and Eighth circuits in the immediate years after Chapter 12 was enacted.[12] However, the opinions adopting the minority position in those circuits are no longer good law due to *In re Beard*, 45 F.3d 113 (6th Cir. 1995), and *In re Wagner*, 36 F.3d 723, 728 (8th Cir. 1994), both of which adopted the majority position. While a handful of opinions outside of those circuits have adopted the minority position, most if not all of them ultimately rely on those earlier cases that are no longer good law.[13]

---

[12] *See, e.g.*, *In re Finkbine*, 94 B.R. 461 (Bankr. S.D. Ohio 1988); *In re Mouser*, 99 B.R. 803 (Bankr. S.D. Ohio 1989); *In re Citrowske*, 72 B.R. 613 (Bankr. D. Minn. 1987); *In re Hagensick*, 73 B.R. 710 (Bankr. N.D. Iowa 1987); *In re Greseth*, 78 B.R. 936 (D. Minn. 1987); *In re Rott*, 73 B.R. 366 (Bankr. D.N.D. 1987); *In re Logemann*, 88 B.R. 938 (Bankr. S.D. Iowa 1988).

[13] *See, e.g.*, *In re Sutton*, 91 B.R. 184, 184 (Bankr. M.D. Ga. 1988) (adopting *In re Logemann*); *In re Weaver*, Nos. 87-60047 & 87-60129, 1987 Bankr. LEXIS 2545, at *6 (Bankr. M.D. Ga. Aug. 20, 1987) (adopting *In re Citrowske*); *In re Golden*, 131 B.R. 201, 203–04 (Bankr. N.D. Fla. 1991) (citing *In re Mouser*, *In re Finkbine*, *In re Sutton*, and *In re Logemann*)).

15

The Court agrees with the majority position. The plain meaning of § 586(e)(2) compels the Court to give effect to the phrase "received by." A construction that gives effect to "received by" is also supported by statutory history. As explained in *In re Wagner*, 36 F.3d 723 (8th Cir. 1994):

> Our comparison of the language of § 586(e)(2) with the language of the statute it replaced strongly bolsters this construction of the statute. Prior to the enactment of Chapter 12 and the amendment of § 586, trustee's fees payable under Chapter 13 were governed by § 1302(e), which provided that trustee's fees should be collected "from all payments under [Chapter 13] plans." 11 U.S.C. § 1302(e) (1982). This wording gave rise to disputes similar to the one here, with Chapter 13 trustees arguing that fees were owing on disbursements made directly by debtors to impaired creditors because these were "payments under [the] plan." *See e.g., Foster v. Heitkamp (In re Foster),* 670 F.2d 478, 490–91 (5th Cir.1982). In 1986, Congress replaced § 1302(e) with § 586(e)(2) and altered the language to require fees "from all payments received by" the trustee. Section 1202(d)(2) of Chapter 12, *see* 11 U.S.C. § 1202 note (Supp. IV 1986), as originally enacted, mirrored the language of § 1302(e), but Congress replaced § 1202(d) almost immediately with § 586(e)(2) when it placed administration of the standing trustee system of Chapters 12 and 13 under the United States trustee. In light of the frequency with which disputes over trustee's fees under Chapter 13 were litigated prior to 1986, the revision is significant.

*Id.* at 727–28 (alteration in original; footnotes omitted). Numerous other courts have made similar observations about the addition of "received by" to the statute. *See, e.g. In re Erickson P'ship*, 83 B.R. 725, 728 (D.S.D. 1988); *In re Heller*, 105 B.R. 434, 437 (Bankr. N.D. Ill. 1989); *In re Wright*, 82 B.R. 422, 423 (Bankr. W.D. Va. 1988); *In re Westpfahl*, 168 B.R. 337, 362 (Bankr. C.D. Ill. 1994); *In re Edge*, 122 B.R. 219, 220–21 (D. Vt. 1990); *In re Derickson*, 226 B.R. 879, 881 n.3 (Bankr. S.D. Ill. 1998); *In re Aguirre-Colon*, 647 B.R. 576, 583 (Bankr. M.D. Fla. 2022).

16

The Court finds further support for its conclusion in the authorities construing § 586(e)(2) in Chapter 13 cases. Construing the same statutory provision, these authorities likewise give effect to "received by" in § 586(e)(2). *See, e.g.*, *In re Aberegg*, 961 F.2d 1307, 1309 (7th Cir. 1992) ("Who actually disburses the debtor's payments is of great interest to the trustee, because the trustee is entitled to his statutory commission only on the funds that he actually receives from the debtor pursuant to the Chapter 13 plan. The trustee collects no commission on funds that the debtor disburses directly to a creditor.") (citation omitted) (citing 28 U.S.C. § 586(e)(2)); *In re Soussis*, 136 F.4th 415, 423 (2d Cir. 2025) ("The trustee may collect the percentage fee only from those payments that the trustee receives and distributes, and not from payments that the debtor makes directly to creditors."); *In re Burkhart*, 94 B.R. 724, 728 (Bankr. N.D. Fla. 1988) ("Accordingly, this Court holds that, where the debtor's plan provides for, and the Court approves, payments directly to a secured creditor, the trustee is not entitled to a commission on those payments."); *In re Weathers*, No. 14-41938, 2018 WL 11357474, at *6, 2018 Bankr. LEXIS 4333, at *16–17 (Bankr. E.D. Tex. July 3, 2018) ("The trustee acknowledges that she did not actually 'receive' the funds to pay the mortgage arrearage in this case. The trustee has not established congressional intent contrary to the plain language of 28 U.S.C. § 586(e)(2)."); *In re Stinebaugh*, No. 13-20447-TLM, 2013 WL 5883765, at *3, 2013 Bankr. LEXIS 4560, at *5 (Bankr. D. Idaho Oct. 30, 2013) (no statutory fee on disbursements to creditors from proceeds of pre-confirmation sale of real property); *In re Roberts*, 226 B.R. 240, 241 (Bankr. D. Idaho 1998) (granting secured creditor's motion to disburse sale proceeds, held by debtor,

17

without providing for trustee fee); *In re Aguirre-Colon*, 647 B.R. 576, 577 (Bankr. M.D. Fla. 2022) ("The issue before the Court is whether the Chapter 13 Trustee earns a commission in connection with secured arrears claims if the debtors sell the property subject to the arrears, have the title company satisfy the secured claims (including the arrears) at the closing of the sale, and seek to modify their confirmed plan to remove these claims from the Trustee's administration. Upon consideration of the arguments of counsel, the law, the case docket, and being otherwise fully advised in the premises, the Court concludes that the Debtors may modify their plan as proposed, and that 28 U.S.C. § 586 does not provide for payment of a commission under such modified plan.") (footnote omitted); *see also, e.g.*, 8 COLLIER ON BANKRUPTCY ¶ 1302.05[1][c] (16th 2026) ("The section directs the trustee to collect the percentage fee 'from all payments received by such individual under plans.' … [I]t seems clear that the language enacted in 1986 does not permit the trustee to collect the percentage fee from payments which are not received by him or her because they are paid directly to creditors.").

Here, the payments at closing to Synovus, the USDA, DFS, and Mitchell County were made directly by the Debtor (or the Debtor's closing attorney) and not received by the Trustee. Accordingly, the statutory fee of 28 U.S.C. § 586(e) does not apply to those payments.[14]

---

[14] The Court acknowledges the construction of § 586(e)(2) adopted in this opinion is at odds with two opinions of judges of this district's Bankruptcy Court. *In re Sutton*, 91 B.R. 184, 184 (Bankr. M.D. Ga. 1988) (Hershner, B.J.); *In re Weaver*, Nos. 87-60047 & 87-60129, 1987 Bankr. LEXIS 2545 (Bankr. M.D. Ga. Aug. 20, 1987) (Laney, B.J.).

18

## IV. Conclusion

For the foregoing reasons, the Court concludes the statutory fee of 28 U.S.C. § 586(e) does not apply to the following: the $3,415,843.24 payment to Synovus; the $593,827.63 payment to Synovus; the $247,903.31 payment to Synovus; the $96,918.95 payment to Synovus; the $235,977.35 payment to the USDA; the $75,000.00 payment to DFS; and the $20,917.69 payment to Mitchell County.[15]

**END OF DOCUMENT**

---

[15] The Court is neither awarding nor denying compensation but rather deciding the discrete issue of whether 28 U.S.C. § 586(e) applies to the above payments. The Court lacks authority to award, deny, or adjust the compensation of standing trustees. *See* 11 U.S.C. § 326(b) (stating "the court may not allow compensation for services or reimbursement of expenses of … a standing trustee appointed under section 586(b) of title 28"); *In re Land*, 82 B.R. 572, 579 (Bankr. D. Colo. 1988) (28 U.S.C. § 586(e) "contains no provision for judicial supervision of compensation paid to" standing trustees) (quoting *In re Savage*, 67 B.R. 700, 705 (D.R.I. 1986)); *In re Harmon*, No. 1:19-BK-01424-TLM, 2021 WL 3087744, at *3, 2021 Bankr. LEXIS 1960, at *8, (B.A.P. 9th Cir. July 20, 2021) ("[S]tanding trustees are not compensated under the Bankruptcy Code and their compensation is not subject to adjustment by the bankruptcy court.").